UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Winthrop Resources Corporation,                    Civil No. 13-748 (DWF/LIB)

    Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**
Hospital Authority of Ben Hill County
d/b/a Dorminy Medical Center,

    Defendant.

_____

Matthew R. McBride, Esq., and Sofia A. Estrellado, Esq., Winthrop & Weinstine, PA, counsel for Plaintiff.

Timothy P. Tobin, Esq., and Brock P. Alton, Esq., Gislason & Hunter LLP, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant's Amended Motion to Dismiss and Alternative Motion for Transfer of Venue (Doc. No. 8). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Winthrop Resources Corporation ("Plaintiff") is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. (Doc. No. 1, Ex. 1, Compl. ¶ 1.) Plaintiff is a financial services company that specializes in leasing equipment. (*Id.* ¶ 3.) Defendant Hospital Authority of Ben Hill County, doing business

as Dorminy Medical Center, ("Defendant") is a medical center located in Fitzgerald, Georgia.  (*Id.* ¶ 2.)

Sometime in 2007, one of Plaintiff's sales representatives, Ken Heimbach, called Defendant to offer Plaintiff's services to Defendant.  (Doc. No. 12, Wynn Aff. ¶ V.)  Thereafter, Mr. Heimbach traveled to Georgia on approximately two occasions to meet with Defendant and discuss a potential lease agreement.  (*Id.* ¶ VI.)  At no point in time did any of Defendant's employees visit Plaintiff in Minnesota.  (*Id.*)  All other lease negotiations between the parties occurred by phone or e-mail.  (*Id.*)  According to Defendant, at no time did Defendant travel to Minnesota in connection with the lease negotiations.  (*Id.*)

Plaintiff and Defendant entered into a lease agreement ("Lease Agreement" or "Agreement"), dated November 30, 2007, pursuant to which Plaintiff purchased computer and technology equipment and leased the equipment to Defendant.  (*Id.* ¶ VII; Compl. ¶ 5.)  Defendant's Chief Executive Officer signed the Lease Agreement, as well as a Master Lease Schedule, on December 11, 2007 in Georgia.  (Wynn Aff. ¶ VII.)  Defendant claims that it has used the leased equipment exclusively at its Georgia facility; it has not made any efforts to use the equipment in Minnesota or to solicit Minnesota consumers.  (*Id.* ¶ IX.)

On March 7, 2013, Plaintiff commenced this action in Hennepin County District Court by filing a Complaint, which alleges a single Count:  Breach of Lease.  (Doc. No. 1, Ex. 1 ("Compl.") ¶¶ 15-19.)  Defendant then removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (Doc. No. 1 ¶ 4.)

Notwithstanding its removal of the lawsuit to federal court, Defendant now moves to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the United States District Court for the Middle District of Georgia.  (Doc. No. 8.)

## DISCUSSION

### I.     Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists.  *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)).  To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, a court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist."  *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)).  For purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel,* 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King,* 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.,* 327 F. 3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.,* 923

4

F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.9, 416, 418-19 (1984)).  Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities.  *Wessels,* 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties.  *Wessels*, 65 F.3d at 1432.  The first three factors are of primary importance, while the last two are "secondary factors."  *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir. 1995).  The third factor distinguishes between specific and general jurisdiction.  *Digi-Tel,* 89 F.3d at 523 n.4 (citing *Wessels*, 65 F.3d at 1432 n.4).

### A.     Defendant's Contacts with Minnesota

Defendant is a medical center located in Fitzgerald, Georgia.  (Wynn Aff. ¶ III.) Defendant asserts that it is not registered to do business in Minnesota, it does not advertise its services in Minnesota, and it does not own or lease property in Minnesota. (*Id.* ¶ IV.)  Defendant has no bank account, inventory, or employees in Minnesota, but acknowledges that "employees have attended unrelated education[] sessions in Minnesota in which [Plaintiff] was not involved."  (*Id.*)

5

Plaintiff contends that the language of the Lease Agreement itself connects Defendant to Minnesota. Specifically, Plaintiff notes that the language of the Agreement was negotiated as follows:

> This Lease Agreement, the Lease Schedule(s), attached riders and any documents or instruments issued or executed pursuant hereto will have been made, executed and delivered in, and shall be governed by the internal laws (as opposed to conflicts of law provisions) and decisions of, the State of Minnesota. Lessee and Lessor consent to the ~~exclusive~~ jurisdiction of any ~~local, state or~~ federal court located within <u>Georgia</u>~~Minnesota~~. ~~Venue must be in Minnesota and Lessee hereby waives local venue and any objection relating to Minnesota being an improper venue to conduct any proceeding relating to this Lease Agreement.~~ At Lessor's sole election and determination, Lessor may select an alternative forum, including arbitration or mediation, to adjudicate any dispute arising out of this Lease Agreement.

(Doc. No. 20, Nesbitt Decl. ¶ 7, Ex. D ¶ 25) (strikeouts in original).

While both Plaintiff and Defendant consented to jurisdiction in the Georgia courts, the parties also agreed that Plaintiff, at its sole discretion, could select an alternative forum. (*See id.*) Additionally, the parties elected to include a Minnesota choice of law provision in their Agreement. (*Id.*) The final Lease Agreement further states: "This Lease Agreement shall not become effective until delivered to Lessor at its offices at Minnetonka, Minnesota and executed by Lessor." (Nesbitt Decl. ¶ 3, Ex. A ("Lease Agreement") ¶ 25.)

During the course of its dealings with Plaintiff, Defendant communicated with Plaintiff in Minnesota by phone and e-mail; those communications were directly related to the negotiation of the Agreement at the center of this litigation. (*See* Wynn Aff. ¶ VI.)

Plaintiff further maintains that "the most important elements" of the parties' financial relationship "either originated in Minnesota, concluded in Minnesota or were

6

performed in Minnesota." (Doc. No. 19 at 5.) Plaintiff has submitted evidence that Plaintiff sent monthly invoices to Defendant in Georgia, and Defendant sent payment to Plaintiff in Minnesota on a monthly basis, pursuant to the Lease Agreement. (Nesbitt Decl. ¶ 10, Ex. G.) Defendant also sent correspondence to Plaintiff's Minnesota location and routinely sent copies of its financial statements to Plaintiff in Minnesota in order to continue the financing relationship. (Nesbitt Decl. ¶ 11.) Additionally, during the installation phase of the Lease Agreement, Defendant executed various documents entitled Certificates of Acceptance, Authorizations to Pay Deposit, and Authorizations to Pay Vendor. (*Id.* ¶ 8, Ex. E.) Defendant sent each of these documents to Plaintiff's address in Minnetonka, Minnesota. (*Id.*) Upon receipt of these documents, Plaintiff, from Minnesota, would direct that the manufacturer be paid as instructed in the documents. (*Id.*)

      **B.**    **Personal Jurisdiction over Defendant**

Plaintiff appears to assert that specific jurisdiction exists here. (*See* Doc. No. 19 at 10 n.5.) The Court first considers the nature, quality, and quantity of Defendant's contacts with Minnesota. Based on the preceding description of the record, it is apparent that Defendant negotiated and entered into a Lease Agreement with Plaintiff, a Minnesota-based company. Although Plaintiff made the initial contact in an effort to pursue a potential relationship with Defendant, Defendant proceeded to engage Plaintiff in negotiations with respect to the prospective business relationship, whereby Defendant communicated with Plaintiff via e-mail and telephone in Minnesota, and ultimately entered into the Agreement. The Agreement, which is at the heart of the litigation here,

was signed by Plaintiff in Minnesota, before Defendant signed the Agreement in Georgia. The Agreement itself includes a Minnesota choice of law provision and indicates that the Agreement and its relevant documents "will have been made, executed and delivered in . . . the State of Minnesota." *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 108 F. Supp. 2d 1057, 1061 (D. Minn. 2000) ("Choice-of-law clauses demonstrate a 'defendant's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'"); *see also Nw. Airlines, Inc.*, 111 F.3d at 1390 ("While a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state"). While it is true that the exclusive Minnesota venue provision was negotiated out of the agreement, nevertheless, Defendant ultimately agreed that Plaintiff "may select an alternative forum" at its "sole election and determination." (Nesbitt Decl. ¶ 7, Ex. D ¶ 25; *see also* Lease Agreement ¶ 25.) Importantly, Defendant also sent various documents and invoice payments to Plaintiff in Minnesota over the course of several years, while Plaintiff managed the financing relationship and paid the manufactures for the leased equipment from its location in Minnesota. (Nesbitt Decl. ¶¶ 6-12.)

The Court concludes that these contacts with Minnesota are not random, fortuitous, or attenuated. Instead, they demonstrate an intentional relationship between Defendant and Plaintiff (a Minnesota company). Such contacts should have given rise to a reasonable expectation that Defendant could be haled into court in Minnesota. The Court therefore concludes that the nature, quality, and quantity of Defendant's contacts

with Minnesota favor the exercise of personal jurisdiction over Defendant. *See, e.g., Wessels*, 65 F.3d at 1433-34).[1]

The Court also considers the relationship between the cause of action and Defendant's contacts with Minnesota. Plaintiff alleges that Defendant breached the Agreement it entered into with Plaintiff in a variety of ways. These claims directly relate to Defendant's contacts with Minnesota. There appears to be no dispute that Plaintiff first initiated contact with Defendant. Still, subsequent to the initial phone call, the parties negotiated the Agreement at issue in this lawsuit by way of numerous communications between Defendant in Georgia and Plaintiff in Minnesota. Plaintiff drafted the proposed Agreement in Minnesota, negotiated changes to the Agreement from Minnesota, and signed the Agreement in Minnesota. Notably, the Agreement contains a Minnesota choice of law provision. Therefore, this factor supports the Court's exercise of jurisdiction over Defendant.

In addition, the final two factors, which are accorded less weight in the Court's analysis, also support jurisdiction. Minnesota has an obvious interest in providing a forum in which Plaintiff, a Minnesota company, may litigate its claims. *See Northrup*, 51

---

[1] In further support of its argument against the Court's exercise of personal jurisdiction, Defendant relies on the fact that, over the course of its relationship with Plaintiff, none of Defendant's employees personally met with Plaintiff's representatives outside the State of Georgia. The absence of physical entry into Minnesota, however, is insufficient to permit Defendant to avoid the Court's exercise of jurisdiction. *See Burger King*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State."); *Bulk Process Equip. v. Earth Harvest Mills, Inc.*, Civil No. 10–4176, 2011 WL 1877836, at *4 n.2 (D. Minn. May 17, 2011).

F.3d at 1389.  In addition, the convenience of the parties favors jurisdiction.  A plaintiff is normally afforded its selected forum.  As discussed below with respect to the Court's analysis of the motion to transfer, some witnesses and evidence are located in Minnesota; other witnesses and evidence are located outside of Minnesota.  Any inconvenience to Defendant in litigating in Minnesota would be similarly experienced by Plaintiff if it were required to litigate elsewhere.

      Based on the record before it, the Court concludes that Plaintiff has made a prima facie showing that Defendant is subject to the specific jurisdiction of the Court.  The Court concludes that Defendant purposefully directed its activities toward Minnesota and should have reasonably anticipated being haled into court in Minnesota in a dispute related to its relationship with Plaintiff with respect to the Agreement signed by the parties, which required regular payments to Plaintiff in Minnesota, and which was governed by a Minnesota choice of law provision.  The Court concludes that the quality, quantity, and nature of Defendant's regular contacts with Minnesota over several years in relation to the Lease Agreement establish that Defendant "purposefully availed itself of the privilege of conducting activities in Minnesota and should have reasonably anticipated litigating a dispute regarding the contract in this state."  *Textron Fin. Corp. v. Angler Boat Corp.*, Civil No. 10–1545,  2011 WL 334821, at *4 (D. Minn. Jan. 31, 2011); *see also LOL Fin. Co. v. F.J. Faison, Jr. Revocable Trust,* No. 09–741, 2009 WL 3381298, at *7 (D. Minn. Oct. 16, 2009).  The Court recognizes that Defendant's contacts with Minnesota may not rise very far above the minimum contacts necessary to establish jurisdiction.  The Court's task, however, is not to determine the "best" forum for a suit,

but to determine whether sufficient minimum contacts exist so that a suit against Defendant in Minnesota does not offend traditional notions of fair play and substantial justice. Such contacts exist here. Therefore, the Court denies Defendant's motion to dismiss.[2]

## II.   Venue

Defendant asserts that venue in this district is improper. Under 28 U.S.C. § 1391(a), venue in diversity cases is only appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). When a defendant seeks dismissal for improper venue, it bears the burden of demonstrating that the plaintiff's chosen venue is improper. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

The Court concludes that venue is proper in this district under § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Minnesota. In particular, the parties entered into a Lease Agreement whereby Plaintiff, a Minnesota-based company, provided financing to Defendant. The Agreement required that Defendant make payments to Plaintiff in Minnesota and contained a Minnesota

---

[2]   Because the Court has found that specific jurisdiction exists, the Court need not and does not reach the issue of whether the Court has general personal jurisdiction over Defendant.

choice of law provision.  Plaintiff communicated with Defendant about, and negotiated the details of, the Agreement at issue in this case from Minnesota.  Moreover, the Agreement itself was signed by Plaintiff in Minnesota and states that it was "made, executed and delivered" in the State of Minnesota.  Ultimately, Defendant purportedly failed to pay Plaintiff in Minnesota, an alleged breach which gave rise to this lawsuit.  Based on these activities, the Court concludes that venue in the District of Minnesota is proper.[3]

### III.    Motion to Transfer

Defendant also moves, in the alternative, to transfer this action to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a).  That section provides:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  When deciding a motion to transfer pursuant to section 1404(a), the Court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  Such a determination requires a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id*.  The burden is on the party seeking the transfer "to show that the balance of

---

[3]     Defendant argues that a substantial part of the events or omissions giving rise to the claim occurred in Georgia.  Section 1391(a)(2), however, does not require that there be a single appropriate district for venue, but instead allows for proper venue in more than one district.  *See, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

factors 'strongly' favors the movant." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). Here, there is no dispute that this case "might have been brought" in Georgia. The Court therefore considers the relevant transfer factors.

"[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id*. Normally, there is a presumption in favor of the plaintiff's forum. *Id.* Defendant advocates for transfer, claiming that Minnesota is only convenient for Plaintiff, while Georgia is the location of the "operative facts" pertaining to the subject matter of this action. Plaintiff, however, asserts that Minnesota is not an inconvenient forum, and that Defendant will have no difficulty litigating this action in Minnesota. The Court finds that the convenience of the parties weighs in favor of maintaining this action in Minnesota because transfer to Georgia would simply shift the inconvenience to Plaintiff.

The convenience of witnesses is an important factor for the Court and the parties because it affects the access to sources of proof. *Id*. at 1121. In considering the convenience of witnesses, courts have focused on the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See id*. Defendant argues that this factor weighs in favor of transfer because its witnesses are based out of its location in Fitzgerald, Georgia.

The Court notes that it appears likely that fact witnesses will reside in both Minnesota and Georgia. In addition, the location of records and documents does not

13

materially impact the convenience analysis in this case. Thus, the convenience of the witnesses does not weigh in favor of transferring this action to the Middle District of Georgia.

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. This factor is weighed "very heavily." *Id.* A number of relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice of law issues, and the advantages of having a local court determine questions of local law. *See Terra Int'l*, 199 F.3d at 696. Defendant argues that the interests of justice weigh in favor of transfer. In particular, Defendant claims that Plaintiff's choice of forum should be given less weight here, not only because the operative events giving rise to the lawsuit occurred in Georgia, but also because issues of Georgia constitutional law may be at issue and judicial economy favors transfer.

As the Court has already explained, a substantial part of the events or omissions giving rise to the claims in this action occurred in Minnesota. Therefore, the Court recognizes the interest in protecting Plaintiff's choice of forum. In addition, as explained above, Minnesota has an interest in providing a forum for Plaintiff. On balance, the Court concludes that maintaining the action here would promote the interests of justice, and the Court finds that this factor does not weigh in favor of transferring this action to the Middle District of Georgia.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendant's Amended Motion to Dismiss and Alternative Motion for Transfer of Venue (Doc. No. [8]) is **DENIED**.

Dated: August 15, 2013					s/Donovan W. Frank
									DONOVAN W. FRANK
									United States District Judge